Eastern Dist.
April, 1840.

FORSTALL ET AL.
vs.
FOWLE.

---

## FORSTALL ET AL. *vs.* FOWLE.

### APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF NEW-ORLEANS.

Where an agent is employed to buy a quantity of fish, in barrels, with discretionary powers to do the best he can in executing the order, and he procures fish which have passed inspection, but in consequence of the barrels not retaining the brine, the greater part of the fish are spoiled on their arrival, and sold at great loss: *Held*, that this is not such a degree of negligence on the part of the agent, as will authorize a recovery in damages.

This is an action of damages, to recover from the defendant a certain sum, for loss on a quantity of fish in barrels, which he had purchased and forwarded as the agent of the plaintiffs.

The plaintiffs show that they employed the defendant's firm in Alexandria, to purchase about six hundred barrels of

prime herrings and shad, in tight barrels, such as would retain the brine; and that the order was so negligently executed, both in the purchase and putting up and shipping said fish, that when they arrived in New-Orleans, the brine having leaked out of the barrels, the fish were sold at a great loss, amounting to one thousand six hundred and thirty-five dollars eighty-three cents, for which they pray judgment.

The defendant pleaded a general denial. The evidence showed that the plaintiffs wrote to defendant the 29th February, 1836, ordering the fish in question, and requiring them to be put up in tight barrels, such as would retain the brine. This letter was in answer to one from the defendant's firm, of the 12th February, soliciting an order for shad and herrings, in which they say: "So far as we can understand, there will be a great improvement in the barrels this year; most, if not all, are made tight, to hold the pickle: this never has been done before."

On receiving the plaintiffs' order, the defendant's firm advised them by letter, on the 17th March, "that they (defendant's firm) would, probably, be obliged to pay for the fish higher prices than they had anticipated; that they were not sure to procure the whole quantity of shad demanded by the order; and that the barrels are much improved, and will be as nearly tight as they can be, of red oak." Upon receiving this, the plaintiffs wrote, that, "with respect to the herrings and shad, you will do the best you can, in the execution of our order. We trust that you will be able to get all the shad."

The fish were purchased and shipped accordingly, after passing inspection; but on their arrival, some or most of the barrels had leaked, and the fish were much spoiled. The plaintiffs called a survey, and had them sold immediately. There was a clear loss on the shipment and charges, to the amount claimed.

The parish judge was of opinion the defendant was liable for the loss; that his mandate and instructions were special, and required him to procure tight barrels, *which would hold*

*the brine.* There was judgment for the plaintiffs, and the defendant appealed.

*T. Slidell,* for the plaintiffs.

1. The point of law on which this question turns, is the duty of an agent to whom a special mandate is given ; and the counsel for plaintiffs cannot present a more satisfactory exposition of the subject, than by referring the court to the decision of the learned judge of the Parish Court. In this decision, the court below assumed as an undoubted principle of the law of mandate, that while a general agent is bound under general rules of agency, a special agent, or, rather, an agent acting under special orders or instructions, is bound *to conform strictly to the tenor of such order or instructions.*

2. Applying this principle to the facts of the case, it is plain that the defendants are responsible to plaintiffs for the loss exhibited in their claim. The plaintiffs ordered the defendants to purchase for them, and ship to the warm climate of New-Orleans, herrings, packed in such barrels as would contain the brine. The defendant did purchase for plaintiffs, but in consequence of his violating the instructions of plaintiffs, which were plain and explicit, and sending herrings packed in barrels incapable of containing the brine, the herrings spoiled, and the plaintiffs were compelled, both in order to save a total loss, and by the orders of the police on the ground of nuisance, to sell the deteriorated goods at auction.

3. It is clear, from the testimony of the witnesses, that, had the fish been packed in barrels capable of retaining brine, they would have resisted the action of climate.

4. If the defendant could not obtain an article *so packed,* as plaintiffs had *specially* directed, and the necessity of which they had ascertained and communicated to defendant, the latter should have declined the execution of the mandate. Having chosen to act in violation of the mandate, he is liable for the consequent loss.

*Josephs,* for the defendant and appellant.

1. This is a question of pure agency; and the parish judge has confounded the responsibilities of an agent, with those of a vendor. The facts show that the plaintiffs ordered the defendants to purchase and ship to them, a certain quantity of fish, "put up in barrels, such as will retain the brine, &c., and to be shipped *immediately*." In answer to this letter, the defendants, their agents, reply, "that they will give their best attention to the order for fish;" state some difficulties in reference to the price, &c., and distinctly inform the plaintiffs that the *herring barrels* are much improved, and will be as *nearly tight as they can be of red oak.* The plaintiffs ratify this proceeding in their answer, by saying: "With respect to the herring and shad, you will please do the best you can in the execution of our order."

2. An agent can only be called upon to exercise the same diligence that a prudent man would pursue in the management of his own affairs, and Zacharie's testimony shows that a quantity of fish of a similar description, sent by one Johnson, for *his own account*, about the same time, was in as bad, or in a worse condition, than those which form the subject of the present suit. Johnson, himself, tells us that his fish were put up carefully, of the first quality, and under his immediate inspection.

3. Is it not, then, unreasonable to ask the defendants to do more in the execution of plaintiffs' order, than merchants, who purchased for their own account, were able to accomplish? *Story's Agency,* 172--174; *Story on Bailments,* 282.

*Martin, J.,* delivered the opinion of the court.

The defendants are appellants from a judgment, by which damages are recovered from them, on a charge of negligence in the execution of an order of the plaintiffs, for the purchase of a quantity of fish.

The record shows that the order was given on information received from the defendants, that there was great improvement in their market in the putting up of fish in tight barrels, which retained the brine. The order expressly states, that the fish was to be put up in the manner described, which was

in tight barrels. On receiving this order, the defendants informed the plaintiffs, that there was a considerable advance in the price of fish, and that the "barrels are much improved, and will be as nearly tight *as they can be*, of red oak."

The plaintiffs, on receiving this letter, directed the defendants to do the *best* they could in the execution of their order. The fish were purchased and shipped, and on their arrival at New-Orleans, in consequence of the barrels not retaining the brine, a great part of the fish were left dry, and were spoiled, so as to require a forced sale, at a great loss.

It is in evidence that, by the inspection laws of the place where the fish were purchased, fish barrels are required to be sufficiently tight to retain the brine. A witness has testified that he understands the inspectors have, of late, been very careless of their duty in this respect.

The parish judge was of opinion that the defendants received a special, not a general mandate, and were bound strictly to comply with the tenor of it. We do not conceive that the case would have been different, if the order had been for a number of barrels of fish, for this would have meant good and merchantable fish. We find, that by the inspection laws of Alexandria, where the defendants reside, barrels of fish which are not sufficiently tight to retain the brine, will not pass inspection, and are, consequently, not merchantable. It is true, the order was given on the information of the defendants, that there was an improvement in their fish market; but it is equally so, that on the receipt of this order, the defendants informed the plaintiffs that they were not to rely implicitly on that improvement, and that red oak barrels were used, which were made as tight as they could be, of that material. On receiving this information, the defendants were directed to proceed with the purchase, and do as well as they could. The barrels having passed an inspection, must have been presumed to be in good order at that time. Their posterior deterioration may be attributed to subsequent circumstances. We cannot give any weight to the charge of negligence in one of the inspectors, to which one of the witnesses vaguely testifies.

Eastern Dist.

*April*, 1840.

TONSTALL ET AL.
*vs.*
FOWLE.

Where an agent is employed to buy a quantity of fish in barrels, with discretionary powers to do the best he can in executing the order, and he procures fish which have passed inspection, but in consequence of the barrels not retaining the brine the greater part of the fish are spoiled on their arrival, and sold at great loss: *Held*, that this is not such a degree of negligence on the part of the agent as will authorize a recovery in damages.

The case does not, in our opinion, establish such a degree of negligence on the part of the defendants, as to authorize a recovery.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be annulled and reversed, and that judgment be entered for the defendants, with costs in both courts.